UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Criminal No. **26cr10222** |
| v. | ) ) | Violations: |
| RICARDO FONTANILLA, | ) ) ) | Count One: Wire Fraud (18 U.S.C. § 1343) |
| Defendant | ) ) | Forfeiture Allegation: |
| | ) ) ) ) ) | (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.      Defendant Ricardo Fontanilla ("FONTANILLA") was a citizen of the United States and the Philippines who lived in Fairfax County, Virginia.

2.      Between approximately 2013 and 2025, FONTANILLA worked for a global financial services firm with U.S. operations headquartered in Massachusetts ("the Victim Company"), and for a predecessor company that the Victim Company had acquired (together, "the Victim Companies").

3.      Among other business lines, the Victim Companies were Master Servicer and Securities Administrators for residential mortgage-backed securities ("RMBS") loan portfolios. The RMBS were investment instruments representing ownership in a pool of such residential mortgage loans.

4.      As Master Servicer and Securities Administrators, the Victim Companies collected

1

borrowers' mortgage payments from third-party mortgage servicers (such as Company A below) and transferred those payments to the beneficiaries of trusts that had invested in RMBS loan portfolios.

5.      Company A was a third-party mortgage servicer that contracted to administer loan portfolios on behalf of the Victim Companies.  Company A collected monthly payments from borrowers, managed escrow accounts, handled customer service, and sent monthly payments to the Victim Companies for mortgages that it serviced.

6.      FONTANILLA worked at the Victim Companies as a Security Administration Services employee.   In that role, among other responsibilities, FONTANILLA had access to the Victim Companies' financial systems related to the receipt of payments from third-party mortgage servicers.   By 2025, FONTANILLA was earning approximately $83,000 annually.

Scheme to Defraud the Victim Company

7.      Between 2013 and 2025, FONTANILLA used his access to the Victim Companies' financial systems to embezzle more than $7 million from the Victim Companies, directing that money, through Company A, to a Wells Fargo bank account with an account number ending in 5907 ("the Wells Fargo Account") that FONTANILLA controlled.

8.      To execute his fraudulent scheme, FONTANILLA used his access to the Victim Companies' financial systems to manipulate the reconciliation data that third-party servicers reported, to make it appear that the Victim Company was expecting <u>less</u> money than what the third-party servicers planned to send—effectively creating the appearance of an overpayment by one or more third-party servicers.

9.      FONTANILLA next caused the Victim Companies to wire those supposed

2

overpayments to Company A—even when Company A was not the purported source of those supposed overpayments. FONTANILLA falsely represented the amounts he wired to Company A to have been legitimately due to Company A.

10. FONTANILLA next contacted Company A representatives by email and falsely claimed that the Victim Companies had overpaid Company A and requested a return of those funds.

11. Finally, FONTANILLA directed a Company A employee by email to wire the supposedly overpaid amounts to his Wells Fargo Account.

*January 2024 Reconciliation Fraud*

12. As one example of FONTANILLA's execution of the scheme, in January 2024, a third-party mortgage servicer reported that it expected to send the Victim Company approximately $667,642.59 related to a particular pool of loans.

13. After receiving the third-party mortgage servicer's report, FONTANILLA authorized a "Reconciliation/Remittance Report" ("the R/R Report") on one of the Victim Company's financial systems. FONTANILLA's R/R Report falsely stated that the Victim Company was expecting a remittance of $516,130.59—an amount that was $151,512 less than the amount that the third-party mortgage servicer had reported it expected to send.

14. As a justification for the Victim Company expecting a lower payment, FONTANILLA fabricated a record in the Victim Company's systems falsely indicating that the borrower had paid off a portion of the loan's principal early.

15. In execution of the scheme, on or about January 22 and January 23, 2024, FONTANILLA caused $151,512—the supposed overpayment—to be wired to Victim Company

3

accounts associated with loans serviced by Company A, even though Company A was not the third-party mortgage servicer that submitted the supposed overpayment.

16.    On or about January 25, 2024, FONTANILLA caused the Victim Company accounts to send the supposed overpayment back to Company A, even though the overpayment had not come from Company A.

17.    On or about January 26, 2024, FONTANILLA emailed a Company A employee, identified the supposed overpayment, and directed by emails that it be wired to the attention of "Ricardo Fontanilla" at his Wells Fargo Account.    FONTANILLA did not disclose to the Company A employee that the Wells Fargo Account was his personal bank account.

18.    In total, in January 2024, FONTANILLA caused Company A to wire approximately $164,074.06 to his Wells Fargo Account.

19.    In similar fashion, between 2013 and 2025, FONTANILLA caused $7,117,298.80 in funds due to the Victim Companies to be wired from Company A bank accounts to his Wells Fargo Account.

*FONTANILLA's Spending*

20.    Between 2013 and 2025, FONTANILLA used his Wells Fargo Account that received the proceeds from his scheme and accounts to which he directed proceeds to, among other expenditures:   (1) fund more than $4.78 million in credit card payments to Capital One, JPMorgan Chase, Wells Fargo, and American Express; (2) make at least $873,000 in mortgage and loan payments; (3) make more than $200,000 in cash and cash-equivalent withdrawals in the United States and abroad; (4) make at least $300,000 in deposits to brokerage accounts at JPMorgan Chase; and (5) make approximately $125,000 in payments to Toyota.   FONTANILLA's credit

card spending included substantial purchases of luxury brands and premium air travel through the

United States, the Caribbean, and Asia.

COUNT ONE
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney charges:

21. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 20 of this Information.

22. On or prior to January 22, 2024, in the District of Massachusetts and elsewhere, the defendant,

RICARDO FONTANILLA,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit, an electronic Reconciliation/Remittance Report to the Victim Company's financial network stating falsely that the Victim Company was expecting a remittance of $516,130.59—an amount that was $151,512 less than the amount that a third-party mortgage servicer had reported it expected to send.

All in violation of Title 18, United States Code, Section 1343.

FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1)(C) & 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

23.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1343 set forth in Count One, the defendant,

RICARDO FONTANILLA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.   The property to be forfeited includes, but is not limited to, the following:

    a.     $188,713.92 seized from the JPMorgan Chase brokerage account numbered xxxx5162 held in the name of Ricardo Fontanilla and Maria B. Fontanilla;

    b.     $120,803.83 seized from the JPMorgan Chase brokerage account numbered xxxx5163 held in the name of Ricardo Fontanilla and Maria B. Fontanilla; and

    c.     $7,117,298.80, to be entered in the form of a forfeiture money judgment.

24.     If any of the property described in Paragraph 23 above as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

7

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 23 above.

All pursuant to Title 18, United States Code, Section 982(a)(1)(C), and Title 28, United States Code, Section 2461(c).

LEAH B. FOLEY
UNITED STATES ATTORNEY

By: _SETH KOSTO_

Digitally signed by SETH KOSTO
Date: 2026.08.10 11:56:39 -04'00'

SETH B. KOSTO
Assistant United States Attorney

August 10, 2026

8